285 F.2d 592
 COMPANIA NACIONAL DE NAVEGACAO CASTEIRO PATRIMONIO, Appellant,
v.
CABINS TANKER INDUSTRIES, INC., Owner of the Steamship THE
CABINS and Terminal Tanker Industries, Inc.,
bareboat charterer, as its interest may
appear, Appellees.
 No. 8118.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 5, 1960.
Decided Jan. 4, 1961.
 
 Hugh S. Meredith, Norfolk, Va. (Braden Vandeventer, Jr., and Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant.
 James F. Young, Philadelphia, Pa. (Leon T. Seawell, Seawell, McCoy, Winston & Dalton, Norfolk, Va., and Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., on brief), for appellees.
 Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The subject matter of this suit is a collision between a tanker and a dry cargo carrier about 9:00 P.M. on the evening of November 16, 1956, off the Cape Henry light near the port of Hampton Roads in the southerly approach to the Chesapeake Bay in Virginia. Cross-libels were filed in which each vessel charged that the collision was caused solely by the negligent operation of the other. The district judge found the dry cargo ship to blame, entered a decree in favor of the tanker, and dismissed the crosslibel in an opinion in which the facts and the respective liabilities of the parties are carefully set out. See D.C., 182 F.Supp. 811.
 
 
 2
 On this appeal it is conceded that the dry cargo ship was at fault and the only question is whether negligence of the tanker contributed to the catastrophe. As appears from the judge's opinion. The Cabins is a tanker of 10,172 gross tons, 523.06 feet in length. On this occasion she carried a cargo of gasoline and heating oil. The Rio Maracana is a dry cargo carrier of 5100 gross tons burdened and 338.5 feet in length. On the night of November 16th she had no cargo in her holds. Shortly before the collision occurred both vessels approached the much traveled area near the entrance to the bay where the Maryland pilot boat for the accommodation of vessels going to and from Baltimore and the Virginia pilot boat for the accommodation of vessels going to and from nearby Virginia ports are stationed. The Rio Maracana, inbound for Hampton Roads, came in first. She directed her course after passing buoy 2-CB off Cape Henry toward the Virginia pilot boat at buoy 2-A several miles to the northwest but before she reached the rendezvous with the pilot she was obliged to drop anchor southwest of buoy 2-A in a fobidden area because of difficulties with her engines. Shortly thereafter the Virginia pilot came aboard, notified the master that the ship was subject to a penalty because of her position and caused the anchor to be raised. Thereupon the vessel, lacking power, swung around from the southeast heading she had had at anchor to a generally northerly heading area but toward the course on which The Cabins was proceeding from the south.
 
 
 3
 The Rio Maracana's errors of navigation at this juncture, as the district judge points out in the opinion, were serious. She not only raised her anchor so that she swung helplessly into the path of the oncoming ship, which was approaching buoy 2-A to take on Maryable pilot, but she made no used of available flares, blinkers or manually controlled signals to warn The Cabins of the danger. Negligence in the handling of her lights was also found upon testimony which, although conflicting, furnished adequate support for the judge's conclusion. When the pilot came aboard the anchor lights were being displayed but when the anchor was raised the running lights, consisting of a white masthead light, range lights and colored side lights, were turned on. Two red lights were also displayed in an apparent attempt to comply with the provisions of Rule 4(a) of the International Rules for Navigation at Sea, 33 U.S.C.A. 145b(a), which require that a vessel not under control for lack of power shall, in lieu of the white running lights, exhibit two red lights in a vertical line visible for two miles. It seems that the vessel was near the boundary line but actually inside the national waters. The red lights were nevertheless displayed but changes were made in them by hauling down the kerosene lights originally displayed and substituting electric lights for tham and at the same time the white running lights and colored side lights were put on so that no adequate or certain information of the helpless condition of the ship was given. Consequently when the anchor was weighed and the ship swung around to the left toward the north the navigators of The Cabines were understandably confused as to the condition and intentions of the Rio Maracana.
 
 
 4
 The Cabins is nevertheless accused of negligence in failing to take proper precautions to avoid the collision as she drew near the Rio Maracana. Evidence accepted by the district judge indicates that The Cabins arrived at buoy 2-CB off Cape Henry and reduced speed in order to take on a Maryland pilot at buoy 2-A to guide her to Baltimore. Her speed was gradually reduced from the time of her arrival at buoy 2-CB until the time of the collision. As she headed for buoy 2-A her navigators saw the running lights of the Rio Maracana, then located about a half mile southwest of Buoy 2-A and headed in a southerly direction. The Cabins then changed her course three or four degrees to the right so as to put the Rio Marcana on the port bow and pass between her and the buoy. The Cabins proceeded at a reduced speed and as she drew within two ships' length of the Rio Maracana she noticed her swinging to the left and apparently directing her course across the path The Cabins was taking. Thereupon the engines of The Cabins were put in reverse in an effort to avoid a collision, but when it was seen to be inevitable the engines of the The Cabins were put full speed ahead with left rudder so as to lessen the impact of the blow, with the result that the bow of the Rio Maracana struck the port side of The Cabins at right angle and scraped along the length of the vessel.
 
 
 5
 It is urged, on behalf of the Rio Maracana, that more effective efforts should have been taken to avoid the collision by retarding the engines or changing the course of The Cabins before her navigators realized that otherwise a collision was imminent. But we think the reasons given by the district judge in discussing the facts in his opinion justify his conclusion that negligence on the part of The Cabins in the emergency caused by the maneuvers of the Rio Maracana was not proved. The case is a typical one for the application of the established rule that when the fault on the part of one vessel in a collision, sufficient to account for the disaster, is established by uncontroverted proof it is not enough to raise doubts about the management of the other vessel, but in order to hold her liable there must be proof of fault beyond a reasonable doubt. White Stack Towing Corp. v. Bethlehem Steel Co., 4 Cir., 279 F.2d 419; The City of New York, 147 U.S. 72, 85, 13 S.Ct. 211, 37 L.Ed. 84.
 
 
 6
 Affirmed.